Corwin v. British Am. Tobacco, PLC, 2015 NCBC 3.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 8130

DR. ROBERT CORWIN AS TRUSTEE
FOR THE BEATRICE CORWIN
LIVING IRREVOCABLE TRUST, on
Behalf of a Class of Those Similarly
Situated,

            Plaintiff,

    v.

BRITISH AMERICAN TOBACCO
PLC; REYNOLDS AMERICAN, INC.;
SUSAN M. CAMERON; JOHN P.
DALY; NEIL R. WITHINGTON;
LUC JOBIN; SIR NICHOLAS
SCHEELE; MARTIN D. FEINSTEIN;
RONALD S. ROLFE; RICHARD E.
THORNBURGH; HOLLY K.
KOEPPEL; NANA MENSAH;
LIONEL L. NOWELL III; JOHN J.
ZILLMER; and THOMAS C.
WAJNERT,

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**INTERIM ORDER ON DEFENDANTS'
MOTIONS TO STAY DISCOVERY**

{1}    THIS MATTER is before the Court on Defendants Reynolds American Inc., ("RAI") Cameron, Daly, Feinstein, Rolfe, Withington, Scheele, Jobin, Thornburgh, Koeppel, Mensah, Nowell, Zillmer, and Wajnert's ("the Director Defendants;" together with RAI, "the RAI Defendants") Motion to Stay Discovery ("RAI and Directors' Motion") and British American Tobacco p.l.c's ("BAT") Motion to Stay Discovery and for Protective Order ("BAT's Motion;" collectively "the Motions"). These Motions seek to stay all discovery pending the Court's determination of motions to dismiss the complaint. After the Motions were filed, RAI scheduled a shareholders' meeting on January 28, 2015. In response, Plaintiff filed a Motion for Preliminary Injunction that seeks to enjoin that shareholders'

meeting until further disclosures are made, and seeks a more narrow set of discovery on an expedited basis regarding three defined subject matters for which he contends disclosures made to date are inadequate. For reasons expressed below, the Court concludes that no expedited discovery is required from BAT prior to the hearing on Plaintiffs Motion for Preliminary Injunction on January 16, 2015, that RAI should produce limited discovery on an expedited basis, and that the Court otherwise defers a final ruling on the motions to stay discovery.

{2} Any findings of fact and conclusions of law in this Order are solely for purposes of determining the Motions and are not intended to become the law of the case.

## I. OVERVIEW OF MATTER PRESENTED

{3} The litigation involves a transaction announced on July 15, 2014, involving RAI, BAT, Lorillard, Inc. ("Lorillard"), and Imperial Tobacco Group p.l.c. ("Imperial") (the "Transaction"). Plaintiff asserts a number of claims and, for convenience, refers to some as "fairness claims" and some as "disclosure claims." This Order is limited to disclosure claims, and more particularly to discovery related to Plaintiff's Motion for Preliminary Injunction to Enjoin Shareholder Meeting and Vote. The Court expresses no opinion as to any other discovery.

{4} Lazard Frères & Co, LLC ("Lazard") served as the RAI's financial advisor in connection with the Transaction.

{5} Under this transaction, RAI would acquire Lorillard by paying Lorillard shareholders a combination of cash and RAI shares, Lorillard would sell certain brands to Imperial, and BAT would purchase additional shares to allow BAT to maintain its current 42% ownership stake in RAI. To complete the Transaction, RAI shareholders must approve the issuance of the shares necessary for the sale to BAT. That is the purpose of the January 28 shareholders' meeting.

{6} The transactional documents set a reference price of $60.16 for RAI shares. BAT will purchase its shares at that price. Lorillard shareholders will receive cash and a fixed amount of shares, so that the total value of the transaction

to a Lorillard shareholder varies as the market price fluctuates until the date of closing. As of the date of this Order, the value of one share of RAI is above $60.16.

{7}   While Plaintiff will ultimately pursue broader discovery, he seeks at this time to have expedited discovery in three areas necessary to fully present his preliminary injunction motion. The areas relate to a possible technology sharing agreement, details regarding Lazard's discounted cash flow ("DCF") analysis, and matters related to potential regulation of menthol products.

{8}   When announcing the Transaction on July 15, 2014, both RAI and BAT referenced, among other things, that RAI and BAT had agreed to pursue a technology sharing agreement. Certain members of the investment community apparently concluded from the wording of the press releases and subsequent statements by RAI and BAT management that a technology sharing agreement had, in fact, been reached. RAI management later stated during earnings calls that such an agreement had not yet been reached. RAI's CFO and lead negotiator, Thomas R. Adams, has now submitted an affidavit that no technology sharing agreement has been reached. (Adams Aff. ¶ 9.) He does not otherwise discuss any agreement in principle to pursue such an agreement.

{9}   The Joint Proxy/Prospectus that RAI and Lorillard jointly filed on December 22, 2014, refers to a technology sharing agreement only when describing this litigation. RAI asserts that the terms of various transactions necessary to consummate the overall Transaction reflect that they are not conditioned on any technology sharing agreement being finalized.

{10}   Plaintiff seeks expedited discovery regarding the basis and background of public statements made by RAI and BAT regarding a technology sharing agreement. Defendants resist.

{11}   RAI has agreed to produce, subject to a protective order, further information regarding Lazard's DCF analysis. The Court finds that this production is adequate at this time as to this subject. The Court will approve an appropriate protective order when presented.

{12}   As to discovery regarding matters related to potential regulation of menthol, the Court finds that Plaintiff has not made an adequate showing to justify expedited discovery.

## II. PROCEDURAL HISTORY

{13}   Plaintiff filed his Class Action Complaint on August 8, 2014, subsequently filing his First Amended Class Action Complaint on November 7, 2014, asserting claims based on breaches of fiduciary duties of care, loyalty, and candor, and asserting that BAT owes fiduciary duties to RAI shareholders as a controlling shareholder, even though it owns a minority interest in RAI.

{14}   Defendants moved to dismiss the First Amended Class Action Complaint, with the RAI Defendants alleging that Plaintiff has no standing to bring a claim against them and BAT claiming that it owes no fiduciary duties to RAI shareholders.  Defendants also moved to stay all discovery pending ruling on the motions to dismiss.  BAT filed its Motion to Stay Discovery and for Protective Order on December 5, 2014.  The RAI Defendants filed their Motion to Stay Discovery on December 8, 2014.  Plaintiff filed its Omnibus Opposition to Defendants' Motions to Stay Discovery on December 17, 2014.  The RAI Defendants and BAT filed their replies on December 29, 2014.

{15}   On December 22, 2014, RAI announced that a shareholder vote would be held on January 28, 2015, to approve the share issuance related to the subscription agreement between RAI and BAT.  Plaintiff indicated that it wished to pursue a narrowed area of discovery limited to its disclosure claims on an expedited basis.  During a conference with the parties on December 30, 2015, the Court allowed supplemental briefing on the Motions. Plaintiff filed his Motion for Preliminary Injunction to Enjoin Shareholder Meeting and Vote.  RAI Defendants filed their supplemental brief on January 5, 2015, and Plaintiff filed on January 6, 2015. Defendants filed Adams's affidavit in conjunction with their supplemental filing.  BAT filed no supplemental brief, standing on its position that no discovery should be required of it until a ruling on the motions to dismiss, as any discovery

the court might deem necessary on the disclosure claims could be adequately made by the RAI Defendants.

## III. CONTENTIONS OF THE PARTIES

{16} Plaintiff cites the January 28, 2015, shareholder vote as justification for the need for "immediate, targeted discovery." (Pl.'s Omnibus Opp'n Defs.' Mots. Stay Disc. 2.) While he contends that the broader discovery is now past due, so that it cannot be fairly said to be "expedited," Plaintiff offers to prioritize discovery to the three categories of documents described above. More specifically, Plaintiff seeks the immediate production of: (1) banker's books with respect to the Transaction; (2) Board minutes discussing or referencing any potential transaction or strategic combination with Lorillard, BAT, and/or Imperial; and (3) documents and communications about the purported Technology Agreement. (Pl.'s Omnibus Opp'n. Defs.' Mots. Stay Disc. 3.)

{17} As to the purported technology agreement between RAI and BAT, Plaintiff cites several press releases and articles which he contends show that RAI and BAT have entered an agreement. (Pl.'s Omnibus Opp'n Defs.' Mots. Stay Disc. 8.) Plaintiff additionally filed affidavits from his experts asserting both their view that this agreement is material and further that public reactions demonstrate the materiality of any technology sharing agreement.

{18} The RAI Defendants assert that Plaintiff misconstrues these various statements and has no basis to assert that RAI and BAT have entered a technology sharing agreement, so that obviously Plaintiff cannot obtain in discovery an agreement that does not exist. RAI offered Adams's affidavit to clarify that no technology sharing agreement has been entered between RAI and BAT. Plaintiff continues to challenge that assertion. These Defendants do, however, admit that BAT and RAI are discussing the possibility of a potential agreement. (Reynolds Am., Inc. Dir. Defs.' Reply Br. Supp. Mot. Stay Disc. 1.)

{19} Further, the various statements on which Plaintiff relies (collected in the affidavit of Julie Ledwig) make clear that RAI and BAT have made at least a

commitment to pursue an agreement for further collaborative efforts for technology initiatives. Significantly, in RAI's own press release announcing the Transaction, in a section entitled "Transaction Highlights," states that "Reynolds American and BAT Agree in Principle to a Joint Technology-Sharing Strategy for Next-Generation Products." (Ledwig Aff. Ex. A, at 1.) It is unclear whether that "agreement in principle" has been reduced to writing.

{20} The RAI Defendants contend that any negotiations or the nature of any potential agreements are immaterial to the limited decisions the shareholders must make as to whether to issue the shares.

{21} As described below, the Court cannot discern from the present record whether either the RAI Board or Lazard in their evaluation of the transaction utilized or made any assumption as to the scope and nature of the agreement in principle or potential technology sharing agreement that RAI and BAT management chose to reference in their July 15, 2014, press release.

{22} As to Lazard's DCF analysis, as noted, the RAI Defendants have agreed to produce additional documentation upon the entry of a protective order, and the Court concludes that this agreement is adequate. The Court will promptly enter the appropriate protective order to facilitate the production that has been agreed to.

{23} As to the issue of potential menthol regulation, Plaintiff's supporting papers include little argument and make no compelling case for immediate discovery. The Court further notes that the Joint Proxy/Prospectus states the following:

> Under the terms of the merger agreement, RAI and Lorillard expressly agreed that any menthol regulatory action would not be considered in determining whether a material adverse effect . . . had occurred. In addition, . . neither the RAI board of directors nor the Lorillard board of directors may change its recommendation to its shareholders in connection with the merger based on any menthol regulatory action.

Reynolds Am., Inc., Joint Proxy/Prospectus (Form 424(b)(3)) (Dec. 22, 2014) *available at* https://www.sec.gov/Archives/edgar/data/1275283/0001193125

14449884/d803939d424b3.htm.

## IV. LEGAL PRINCIPLES

{24}     Discovery sought on an expedited basis is subject to a heightened standard, which requires a demonstration of good cause. *Ehrenhaus v. Baker*, 2008 NCBC LEXIS 20, at *13 (N.C. Super. Ct. Nov. 3, 2008). Where the movant seeks expedited discovery to prepare for a preliminary injunction hearing, the Court does not employ the preliminary injunction factors to determine the motion's propriety, but reviews "the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005).

{25}     To show good cause, a plaintiff must "articulate a sufficiently colorable claim and show a sufficient possibility of a threatened irreparable injury to justify imposing on the defendants and the public the extra (and sometimes substantial) costs of an expedited . . . proceeding." *Ehrenhaus*, 2008 NCBC LEXIS 20, at *13 (omission in original) (quoting *Marie Raymond Revocable Trust v. MAT Five LLC*, No. 3843-VCL, 2008 Del. Ch. LEXIS 77, at *6 (June 26, 2008)).

{26}     While there are significant variations in North Carolina and Delaware standards defining a director's duty in certain merger transactions, the North Carolina courts frequently consider Delaware precedent without being bound by it. Delaware cases recognize that "establishing a colorable claim is not an onerous burden for a plaintiff to meet," *In re K-Sea Transp. Partners L.P.*, No. 6301-VCP, 2011 Del. Ch. LEXIS 90, at *13 (June 10, 2011), that a claim is colorable if it presents a "non-frivolous set of issues," *In re BioClinica, Inc. S'holder Litig.*, No. 8272-VCGT, 2013 Del Ch. LEXIS 250, at *2 n.1 (Oct. 16, 2013), that the burden of demonstrating colorability is "almost minimal," *Ehlen v. Conceptus, Inc.*, No 8560-VCG, 2013 Del. Ch. LEXIS 133, at *4 (May 24, 2013), and that a Plaintiff need not prove its claim has "no reasonable chance of resulting in a liability determination." *TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, No. 18336, 2000 Del. Ch. LEXIS 186, at *5 (Oct. 2, 2000).

{27}    However, here, expedited discovery is not reviewed in the abstract.  It must be tied to the RAI shareholder vote that is the subject of the injunction Plaintiff seeks.  Accordingly, the Court considers the discovery in the context of what the RAI shareholders are asked to decide during the shareholder vote. Directors are under a duty to fully and fairly disclose all material information within the board's control when it seeks shareholder action.  *Ehrenhaus v. Baker*, 216 N.C. App. 59, 88, 717 S.E.2d 9, 28 (2011).

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. . . .  Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of the information made available.

*Id.* at 88, 727 S.E.2d at 28–29.  However, a "play-by-play description of every consideration or action taken by a Board" is not required "especially when such information would tend to confuse stockholders or inundate them with an overload of information."  *Gunsinsky v. Flanders Corp.*, 2013 NCBC LEXIS 43, at *32 (N.C. Super. Ct. Sept. 25, 2013) (quoting *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 511–12 (Del. Ch. 2010)).

{28}    If the discovery can be adequately tied to the subject of the upcoming shareholder vote, there are good reasons why the discovery should proceed before that vote.  *See In re SunGard Data Sys., Inc. S'holders Litig.*, No. 1221-N, 2005 Del Ch. LEXIS 105, at *5 (July 8, 2005) ("[T]he court is best able to provide a full and adequate remedy to the class of stockholders if the likelihood of a material disclosure violation is shown—namely, requiring the company to correct its false or misleading disclosures.")  But, expedited discovery should be carefully tailored so as to impose no greater burden than reasonable in light of the claims being made.  A North Carolina federal district court offers that the Court might use the following factors to accomplish such tailoring: (1) whether the plaintiff had detailed the areas in which expedited discovery was necessary such that expedited discovery was reasonably timed; (2) whether the discovery was "narrowly tailored to obtain

information relevant to a preliminary injunction determination;" and (3) whether the plaintiff made adequate showing that it would be irreparably harmed by delaying broad-based discovery. *Dimension Data N. Am., Inc.*, 226 F.R.D. at 531–32.

## V. DISCUSSION

{29}    The Court will limit its discussion to matters related to discovery regarding a potential technology sharing agreement between RAI and BAT. It does not further discuss its conclusions regarding the other discovery requesting Lazard's DCF analysis and the potential for regulation of menthol products.

{30}    The Court does not believe that the presentations in the briefs and affidavits warrant expedited production of the entirety of the banking books or RAI Board minutes. The discovery should be more targeted.

{31}    The Court does not share the Defendants' narrow view that nothing related to negotiations of a potential technology sharing agreement is material to a shareholder's determination whether to vote in favor of issuing shares necessary to consummate the Transaction. While, for purposes of this Order, the Court accepts Defendants' statement without further inquiry that no part of the overall Transaction is contingent on RAI and BAT reaching agreement on a technology sharing agreement, the Court does not believe that this necessarily leads to the conclusion that considerations regarding a potential agreement are immaterial to the shareholder vote.

{32}    Plaintiff promotes a simple and easily understood argument. RAI and BAT would have had no reason to champion an agreement in principle to pursue a sharing agreement in press releases and public statements if it were not, in fact, a material "Transaction Highlight." The Court, however, does not conclude that the press statements, without more, make further disclosures regarding the agreement in principle or future negotiations necessary and material to the shareholder vote.

{33}    As to Plaintiff's argument that broad discovery is justified because Adams's Affidavit is suspicious, the Court observes that Adams and RAI likely fully

understand the ramifications of denying under oath an agreement that they know does, in fact, exist.

{34} But, again accepting that no final technology sharing agreement has been reached does not, by itself, end the Court's inquiry. There remains a question as to whether RAI factored that agreement or the potential expected future agreement into the valuation of the Transaction. If it did, the Court is not yet persuaded that further information regarding the agreement in principle or the expected future agreement is immaterial to the upcoming shareholder vote.

{35} The Court does not believe that there is a basis for a broad search and production of all documents somehow related to negotiations between RAI and BAT regarding a potential, future technology sharing agreement. The Court's view of the appropriate discovery is more confined. The various statements that Plaintiff has cataloged indicate that some form of agreement to pursue a potential technology sharing agreement has been reached. If there is such an agreement that has been reduced to writing, or fully summarized in writing, the document should be produced. Adams's affidavit does not specifically refute the existence of some tangible, written agreement between RAI and BAT to pursue a technology sharing agreement. Because RAI and BAT interjected the existence of the agreement in principle in public statements, the Court believes that Plaintiff should not be required prove that such an agreement, assuming it exists, is material in order that it be produced.

{36} However, the Court is careful to note that it has not reached a conclusion that such an agreement, even if produced, is material. Further inquiry would be necessary to reach such a conclusion. To be material, it may be necessary for Plaintiff to demonstrate that the existence of that agreement, or terms that it embodies, were factored into the Board's or Lazard's valuation of the transaction. For that reason, the Court concludes that Plaintiff should be further entitled to examine any documents, if they exist, which represent how the agreement was factored into either the Board's or Lazard's valuation.

{37}    At this time, the Court cannot conclusively say that there is no further documentation regarding the "agreement in principle" or "agreement to pursue" that would not significantly add to the "total mix" of information available to shareholders so as to deny any expedited discovery.

{38}    The Court believes that the burden on RAI to search and produce on an expedited basis should nevertheless be limited.  The Court's ruling should not be construed to require RAI to search for or produce all documentation regarding the negotiations that may have led to an agreement or every discussion of potential technology synergies.  The Court is instead focused on the agreement reached and how, if at all, it has been used in valuation.

{39}    RAI should be required to produce:  (1) the agreement which was reached as referred to in the July 15 press release and subsequent communications by RAI and BAT management, if it exists in tangible form; (2) any statement or discussion in RAI Board minutes reflecting a value placed on such agreement for purposes of overall valuation of the Transaction; and (3) any statement or discussion in the banker's books reflecting a value placed on such agreement for purposes of overall valuation of the Transaction.  If no such documents exist, RAI should so verify under oath.

## VI. CONCLUSION

{40}    The Parties shall submit on or before 12:00 p.m. January 9, 2015, an agreed-to interim protective order, or failing agreement as to form, their separate proposed interim protective orders, after which the Court will endeavor promptly to enter an interim protective order.

{41}    RAI shall within twenty-four hours of the entry of that protective order produce the documents related to Lazard's DCF analysis that it has agreed to produce, subject to the Court's protective order;

{42}    RAI shall on or before 12:00 p.m., January 14, 2015, either produce or verify the absence of:

1. the document or documents which constitute the agreement referred to in RAI's July 15 press release;

2. any statement or discussion in RAI Board Minutes reflecting a value placed on such agreement for purposes of overall valuation of the Transaction; and

3. any statement or discussion in the banker's books reflecting a value placed on such agreement for purposes of overall valuation of the Transaction.

{43}    In the event that the agreement referred to in paragraph 42.1, above, is not reflected in any document, RAI shall on or before 12:00 p.m. on January 14, 2015, file an affidavit stating the terms of the agreement.

{44}    Except as ordered, the Court defers further ruling on Defendants' Motions to Stay Discovery.


IT IS SO ORDERED this the 8th day of January, 2015.